# Third District Court of Appeal

## State of Florida

Opinion filed April 13, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-1575
Lower Tribunal No. 18-16130
_____


**Kenzie Sadlak,**
Appellant,

vs.

**Frank Trujillo,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, George A. Sarduy, Judge.

Kenzie N. Sadlak, P.A., and Kenzie N. Sadlak, for appellant.

Joyce Law, P.A., and Richard F. Joyce, for appellee.


Before FERNANDEZ, C.J., and LINDSEY and LOBREE, JJ.

LOBREE, J.

Kenzie Sadlak (the "mother") appeals from a final judgment of paternity

and the denial of her motion for rehearing.  The mother also appeals four non-final orders entered in the case.  The mother raises multiple issues on appeal, only two of which warrant discussion.  First, we find that the trial court erred in determining the amount of income to impute to the mother for child support purposes.  Second, we find that the trial court erred in failing to make findings as to each party's net income and in not including a child support guidelines worksheet in the final judgment.  Therefore, we reverse that portion of the final judgment awarding child support to Frank Trujillo (the "father"), and remand with directions to conduct a new hearing on child support.  We further instruct the trial court to approve and attach the parenting plan to the final judgment.  We affirm the final judgment in all other respects.[1]

Facts and Procedural Background

Although the factual and procedural history of this contentious family law matter is lengthy, we confine the facts to the narrow issues addressed on appeal.  The mother and father are the parents of two minor children.  The

---

[1] Among the multiple orders from which the mother seeks review, the mother challenges the trial court's July 10, 2020 order granting the father's motion for protective order and for sanctions, which determined that the father was entitled to attorneys' fees.  Because the order merely found entitlement to attorneys' fees but did not set an amount, we dismiss that portion of the appeal as taken from a non-final, non-appealable order.  Kling Corp. v. Hola Networks Corp., 127 So. 3d 833 (Fla. 3d DCA 2013).

father petitioned to establish parental responsibility, parenting plan, timesharing, and other related relief, seeking shared parental responsibility, primary timesharing, and child support. The mother counter-petitioned, seeking sole parental responsibility, the majority of timesharing, supervised visitation by the father, and child support. The case proceeded to trial.

At trial, the mother, a self-employed attorney, testified that she earns a monthly gross income of $1,008.98, and that with in-kind payments, her monthly net is $1,215.73. On the issue of imputation of income to the mother, the father called a vocational expert, Tamara Thomas. Thomas testified that the mother held a Florida Bar license and a real estate associate license. Based upon the mother's representations to her, Thomas testified that the mother works full time in her own law firm and has since 2009, and that she makes between $14,000 to $20,000 a year. Thomas opined that the mother was underemployed, and testified about available job listings that she found for attorneys within the mother's practice area. Thomas further testified that the mother was employable as an attorney, paralegal, or as a community association manager ("CAM"), "should she become licensed in that field." Thomas also recommended that a CAM license "would be helpful if she were to pursue jobs in that arena," and that salaries for community association managers were $42,630 to $76,150 per year.

3

In its final judgment of paternity, the trial court awarded shared parental responsibility as to all medical, educational, mental, and emotional decisions of the children, and equal timesharing, with the children alternating weekends with the mother and father, and spending Monday-Tuesday with the mother, and Wednesday-Thursday, with the father. The remaining details about shared parental responsibility and timesharing were set forth in the parenting plan, which the trial court refers to as attached Exhibit A. The parenting plan is not attached to the final judgment. In determining the amount of child support needed, the trial court found that the mother was willfully underemployed and imputed to her an income of $76,000.00 based on a position as a CAM, "since she holds an active CAM license." As to the father, the trial court found he has a gross monthly income of $4,116.76. The trial court ordered the mother to pay the father $361.57 a month in child support, based on child support guidelines, which the trial court refers to as attached Exhibit B. Despite its reference, no child support guidelines worksheet was attached to the final judgment. Five days after the final judgment was entered, the father filed a parenting plan and a completed child support guidelines worksheet, stating they were the exhibits referenced in the final judgment. The mother unsuccessfully moved for rehearing, and this appeal followed.

4

<u>Analysis</u>

On appeal, the mother argues that the imputation of income to her is not supported by competent substantial evidence. "A trial court's decision on *whether* to impute income is reviewed for an abuse of discretion . . . ." <u>Saario v. Tiller</u>, 333 So. 3d 315, 321 (Fla. 5th DCA 2022). But "[t]he framework the court uses to determine whether imputation is necessary and, if so, how to calculate an amount is an issue of law we review de novo." <u>Waldera v. Waldera</u>, 306 So. 3d 1037, 1039 (Fla. 3d DCA 2020) (quoting <u>Lafferty v. Lafferty</u>, 134 So. 3d 1142, 1144 (Fla. 2d DCA 2014)). "[T]he *amount* of income to impute will be affirmed if supported by competent substantial evidence." <u>Saario</u>, 333 So. 3d 315 at 321.

We affirm the trial court's finding that the mother is willfully underemployed without discussion. We find merit, however, to the mother's claim that the child support award was based on an erroneous amount of imputed income. Where a parent's underemployment is voluntary, "the employment potential and probable earnings level of the parent shall be determined based upon his or her recent work history, occupational qualifications, and prevailing earnings level in the community if such information is available." § 61.30(2)(b), Fla. Stat. (2020); <u>see also</u> <u>Waldera</u>, 306 So. 3d at 1041; <u>Broga v. Broga</u>, 166 So. 3d 183, 185 (Fla. 1st DCA

5

2015). Moreover, "income may not be imputed at a level which the former spouse has never earned, absent special circumstances." Stein v. Stein, 701 So. 2d 381, 381 (Fla. 4th DCA 1997); see also § 61.30(2)(b)2.b.; Tutt v. Hudson, 299 So. 3d 568, 570 (Fla. 2d DCA 2020).

Here, the record lacks competent substantial evidence that the mother was qualified for employment as a CAM or that she had the ability to earn $76,000 a year as a CAM in the relevant community. First, contrary to the trial court's finding, there was no evidence that the mother had, or has ever had, a CAM license. Thus, the trial court's reliance on that fact to impute income is not supported by the evidence. Second, any calculation as to amount of imputed income must consider evidence of the "prevailing earnings level *in the community*." Gillespie v. Holdsworth, 333 So. 3d 278, 280 (Fla. 2d DCA 2022) (quoting § 61.30(2)(b)). While Thomas testified that the mother could, if licensed, work as a CAM and earn between $57,800 and $76,000 a year, her opinion as to an annual salary was based upon data from "[t]he bureau of labor market statistics." Thomas did not testify that the market statistics reflected salaries for CAMs in the community. Additionally, Thomas offered no testimony that there were CAM positions available to the mother in the local market. See Owen v. Owen, 867 So. 2d 1222, 1223 (Fla. 5th DCA 2004) (finding error in amount of income imputed to former wife

6

where only evidence admitted were reports stating national median salaries for relevant position and "[n]either of these reports specifically address the availability of jobs in the area where the former wife resides nor the salary payable for jobs in the Central Florida area or, for that matter, in any community"). Third, it was error to impute to the mother an annual income in the amount of $76,000 because the evidence showed that the mother had never earned more than $65,000 a year. Thus, as to the amount of income imputed to the mother, the trial court's finding was not supported by competent substantial evidence.

The mother correctly asserts that the trial court further erred when it made findings in the final judgment as to each party's gross income *only*, not net income, and failed to file a child support guidelines worksheet with its final judgment. The statutory child support guidelines are applied to the parties' combined net income. § 61.30(6), Fla. Stat. (2020). The trial court is required to make adequate findings as to each party's net income in the final judgment. Garcia v. Espinosa, 314 So. 3d 619, 624 (Fla. 3d DCA 2021) ("The trial court must determine the net income of each parent pursuant to section 61.30, and it must include these findings in the final judgment."); Van Exter v. Diodonet-Molina, 152 So. 3d 699, 701 (Fla. 3d DCA 2014) ("The trial court must determine the net income of each parent pursuant to section

7

61.30, Florida Statutes, and include the findings in the final judgment."). In order to conduct meaningful appellate review of an award of child support, a trial court must also include a child support guidelines worksheet in the the final judgment. Garcia, 314 So. 3d at 625 ("There is also no child support guidelines worksheet filed by the trial court to conduct a meaningful appellate review of the award."); accord Haddad v. Medina, 320 So. 3d 990, 991 (Fla. 3d DCA 2021) (reversing amended final judgment where trial court had yet to approve or file revised child support guidelines worksheets and explaining that in Garcia this Court held that "the trial court's failure to include a child support guidelines worksheet in the final judgment precluded this Court from conducting a meaningful appellate review of the award and warranted reversal"); see also Dorvilien v. Verty, 47 Fla. L. Weekly D707 (Fla. 4th DCA Mar. 23, 2022) (stating rule that failure to attach child support guidelines worksheet to final order is reversible error).

Here, the final judgment made findings only as to each party's *gross income*, and based its determination that the mother pay $361.57 per month in child support on "the child support guidelines attached hereto as exhibit 'B,'" which, undisputedly, was not attached to the final judgment. The guidelines worksheet in the record showing that the mother is responsible for $361.57 per month in child support was filed by the father a week *after*

8

the trial court entered the final judgment. The worksheet was not filed or approved by the trial court at the time it entered final judgment. See § 61.13(1)(a)1.b. (requiring that child support orders provide a payment schedule "based on the record existing at the time of the order"); cf. Fla. Fam. L. R. P. 12.285(k) ("If the case involves child support, the parties must file with the court at or before a hearing to establish or modify child support a Child Support Guidelines Worksheet . . . ."). The failure of the trial court to make findings as to the net income of each party and to include a child support guidelines worksheet in its final judgment warrant reversal for reconsideration of the proper amount of child support needed based upon the parties' net income. See Garcia, 314 So. 3d at 625 ("Because the trial court failed to make specific findings as to the combined net income . . . and to include a child support guidelines worksheet, we reverse the child support determination and remand for reconsideration as to the proper amount of support owed."); see also J.A.D. v. K.M.A., 264 So. 3d 1080, 1083 (Fla. 2d DCA 2019) (reversing child support award because the absence of specific findings as to net income meant that "this court cannot conduct a meaningful appellate review. . . . Additionally, the trial court did not include in the final judgment a child support guidelines worksheet."); Carmack v. Carmack, 277 So. 3d 185, 186–87 n.1 (Fla. 2d DCA 2019) (holding that "[b]ecause the final

9

judgment fails to include factual findings regarding the parties' net monthly incomes, this court cannot conduct a meaningful appellate review of the child support award," and reversing child support award; noting "that the trial court erred in failing to file a child support guidelines worksheet with the final judgment"). Likewise, we find error in the trial court's failure to attach the parenting plan, cf. Magdziak v. Sullivan, 185 So. 3d 1292, 1293 (Fla. 5th DCA 2016), and we direct the trial court on remand to approve and attach the parenting plan filed in the record, concerning which the mother raises no meritorious claims of error.

Conclusion

Because the trial court erred in determining the amount of income to impute to the mother, and further erred in not making findings as to net income and in failing to include a child support guidelines worksheet in its final judgment, we are compelled to reverse and remand for a new hearing on child support. On remand, the trial court may consider new evidence. See Waldera, 306 So. 3d at 1044 ("On remand, the lower court may receive new evidence on the husband's income, as well as on the former wife's imputed income."). We also instruct the trial court to approve and attach the parenting plan on remand.

Affirmed in part; reversed in part and remanded; dismissed in part.